UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DONUTNV FRANCHISING, INC.,
Plaintiff,

v.

DROPPING DONUTS, LLC,
MATTHEW LEE HUGHEY, and
TANYA R. HUGHEY,
Defendants.

Case No.:5:26-cv-000372

_____/

**COMPLAINT FOR INTERIM AND PROVISIONAL INJUNCTIVE RELIEF,**

**DECLARATORY RELIEF, ENFORCEMENT OF ADVANCEMENT OBLIGATION,**

**BREACH OF CONTRACT, AND ATTORNEYS' FEES**

(Declaratory Relief Requested; Preliminary and Permanent Injunctive Relief Requested; Demand

for Jury Trial)


Plaintiff DonutNV Franchising, Inc. ("DonutNV") sues Defendants Dropping Donuts, LLC, Matthew Lee Hughey, and Tanya R. Hughey, and alleges:

### I. Parties

1. DonutNV is a Florida corporation with its principal place of business in Clermont, Florida.

2. Defendant Dropping Donuts, LLC is, upon information and belief, a Texas limited liability company.

3. Upon information and belief, Dropping Donuts, LLC's only members are Matthew Lee Hughey and Tanya R. Hughey, both of whom are citizens of Texas. Accordingly, Dropping Donuts, LLC is a citizen of Texas for diversity purposes.

4. Upon information and belief, Matthew Lee Hughey and Tanya R. Hughey are citizens of Texas.

5. Upon information and belief, Matthew Lee Hughey and Tanya R. Hughey are owners, members, principals, guarantors, operators, managers, and/or personal signatories associated with Dropping Donuts, LLC.

6. Defendants Dropping Donuts, LLC, Matthew Lee Hughey, and Tanya R. Hughey are referred to collectively as the "Hughey Defendants."

## II. Jurisdiction and Venue

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because DonutNV is a citizen of Florida, the Hughey Defendants are citizens of Texas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The amount in controversy exceeds $75,000 because the object of this litigation is DonutNV's contractual right to avoid defending released claims asserted by the Hughey Defendants in an arbitration seeking millions of dollars in aggregate relief, including punitive or exemplary damages, statutory damages, attorneys' fees, interest, and arbitration costs.

9. The amount in controversy is further satisfied by the value to DonutNV of enforcing the General Releases, covenant-not-to-sue provisions, advancement obligations, individual-action requirements, class-waiver provisions, damages-waiver provisions, contractual attorneys' fee provisions, and bargained-for dispute-resolution rights.

10. For purposes of declaratory and injunctive relief, the amount in controversy is measured from DonutNV's perspective by the value of the object of the litigation, including the

value of avoiding prosecution of released claims and enforcing bargained-for contractual rights. See Fastcase, Inc. v. Lawriter, LLC, 907 F.3d 1335, 1342-45 (11th Cir. 2018).

11. Venue is proper in this District because the Franchise Agreement requires non-arbitrable judicial proceedings to be brought in the United States District Court for the district where DonutNV's headquarters are then located, and DonutNV's headquarters are located in Clermont, Florida, within the Middle District of Florida, Orlando Division.

12. The Hughey Defendants consented to jurisdiction and venue in the forum where DonutNV's headquarters are located and waived objections to personal jurisdiction and venue in that forum.

13. Forum-selection clauses are presumptively enforceable, and valid forum-selection provisions should be given controlling weight absent extraordinary circumstances. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972); Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49 (2013).

14. DonutNV seeks judicial relief only to the extent authorized by the parties' agreements and applicable law, including interim and provisional injunctive relief, enforcement of the General Releases and covenant-not-to-sue provisions, enforcement of immediate advancement obligations, determination or preservation of gateway rights concerning non-individual arbitration, enforcement or preservation of damages-waiver rights, and recovery of contractual attorneys' fees and costs.

15. DonutNV does not ask this Court to adjudicate the merits of any non-released claim that must be arbitrated on an individual basis. DonutNV seeks relief to preserve and enforce rights collateral to the merits of any non-released arbitrable dispute.

16. **III. General Allegations**

17. DonutNV and the Hughey Defendants are parties to franchise-related agreements, including at least a Franchise Agreement, Development Rights Rider, addenda to the Development Rights Rider, General Releases, guaranties, and related franchise documents.

18. The Franchise Agreement requires the Hughey Defendants to comply with DonutNV's system standards, brand standards, reporting obligations, confidentiality obligations, dispute-resolution obligations, individual-action requirements, class-waiver provisions, damages-waiver provisions, and other continuing contractual duties.

19. The Franchise Agreement contains an arbitration provision. Except as expressly provided in the Franchise Agreement's carveouts, including the carveout for interim or provisional injunctive relief, the arbitration provision requires disputes, including questions of arbitrability, to be resolved by arbitration.

20. The Franchise Agreement expressly permits either party, without waiving any remedy or right to arbitrate, to seek interim or provisional injunctive relief from a court having jurisdiction.

21. The Franchise Agreement also requires that non-arbitrable legal proceedings be brought in the United States District Court for the district in which DonutNV's headquarters are then located, or, absent federal jurisdiction, in the state court of record for the county in which DonutNV's headquarters are then located.

22. The Franchise Agreement requires claims to be arbitrated, litigated, or otherwise resolved on an individual basis and waives any right to act on a class-wide basis.

23. The Franchise Agreement provides that, in any controversy or claim arising out of or relating to the Franchise Agreement, each party waives the right to recover punitive

damages or other monetary damages not measured by the prevailing party's actual damages, except damages authorized by federal statute.

24. The Franchise Agreement provides for recovery of attorneys' fees, costs, and expenses by the prevailing party in proceedings related to the Franchise Agreement.

25. The Franchise Agreement is governed by Florida law.

26. On or about September 17, 2025, Matthew Lee Hughey and Tanya R. Hughey executed an Addendum to Development Rights Rider and a written General Release in favor of DonutNV.

27. The September 2025 Addendum addressed the Hughey Defendants' default status concerning their third territory and provided development cure options, deferred default status, and other contractual consideration.

28. The September 2025 General Release was supported by good and valuable consideration, including deferred default status, development cure options, and other benefits provided by DonutNV.

29. On or about January 31, 2026, Matthew Lee Hughey and Tanya R. Hughey executed another written General Release in favor of DonutNV in connection with an additional franchise-related addendum package. DonutNV executed the related addendum on or about February 2, 2026.

30. The January 2026 addendum package identified Dropping Donuts, LLC as a Texas limited liability company and identified Matthew Lee Hughey and Tanya R. Hughey as franchisees, owners, and/or co-owners associated with the franchise relationship.

31. The January 2026 General Release was supported by good and valuable consideration, including additional contractual rights, development-related concessions, deferral or modification of fee obligations, and other benefits provided by DonutNV.

32. The September 2025 and January 2026 General Releases are referred to collectively as the "General Releases."

33. In the General Releases, the Releasors released DonutNV, its affiliates, and their respective directors, officers, shareholders, employees, franchise sellers, and agents from any and all claims, causes of action, suits, debts, agreements, promises, demands, liabilities, contractual rights, and/or obligations, of whatever nature, known or unknown, based upon and/or arising out of events occurring through the date of the applicable release, including without limitation anything arising out of the Franchise Agreement.

34. The January 2026 General Release released claims arising out of events occurring through January 31, 2026, including claims arising out of or relating to the Franchise Agreement and related franchise documents.

35. The General Releases contain covenant-not-to-sue provisions prohibiting the Releasors, on behalf of all Releasing Parties, from initiating, prosecuting, encouraging, assisting, or, except as required by law, participating in any civil, criminal, administrative, court, agency, arbitration, or other proceeding against DonutNV or any Released Party with respect to released claims.

36. The General Releases provide that the Released Parties have the right to injunctive relief for breach of the General Releases and covenant-not-to-sue provisions.

37. The General Releases further provide that the Releasing Parties irrevocably agree to entry of an injunction dismissing any claims or counterclaims brought in contradiction to or breach of the General Releases and covenant-not-to-sue provisions.

38. The General Releases contain advancement obligations. Those provisions require that, should a Releasor file suit or counterclaim in litigation or arbitration, or threaten any of the same, each undersigned Releasor must immediately, upon demand from the Released Parties, pay the Released Parties $25,000 as partial, but not full, satisfaction of expenses incurred or likely to be incurred in evaluating and responding to such claims or threatened claims.

39. Matthew Lee Hughey and Tanya R. Hughey are each undersigned Releasors under the General Releases.

40. Matthew Lee Hughey and Tanya R. Hughey executed the General Releases individually and on behalf of any entity through which they interacted with DonutNV or any Released Party, including Dropping Donuts, LLC.

41. Alex Gingold and Amanda Gingold are Released Parties because they are officers, directors, shareholders, employees, franchise sellers, agents, representatives, affiliates, and/or otherwise covered persons under the General Releases.

42. On May 18, 2026, a refiled Demand for Arbitration was filed with the American Arbitration Association against DonutNV, Alex Gingold, and Amanda Gingold.

43. The May 18, 2026 Demand identifies Dropping Donuts, LLC as claimant number 19 among 22 claimant entities.

44. The May 18, 2026 Demand asserts a franchise dispute involving franchisees, DonutNV, and principals of DonutNV.

45. The May 18, 2026 Demand asserts claims including fraud, misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, alleged violations of state and federal consumer-fraud statutes, alleged violations of franchise and consumer-protection statutes, alleged violations of constitutional rights of association, conversion, common-law conspiracy, negligent misrepresentation, unjust enrichment, wrongful termination, punitive or exemplary damages, statutory damages, attorneys' fees, interest, arbitration costs, and other relief.

46. The May 18, 2026 Demand seeks $9,999,999.99 in claimed damages or relief.

47. The May 18, 2026 Demand asserts claims arising from or relating to the Franchise Agreement, the DonutNV franchise relationship, franchise sales activity, franchise operations, DonutNV's system, DonutNV's principals, and events or alleged conduct occurring before the Hughey Defendants executed the January 2026 General Release.

48. To the extent the May 18, 2026 Demand asserts claims based upon or arising out of events occurring through January 31, 2026, those claims are released claims barred by the January 2026 General Release.

49. To the extent the May 18, 2026 Demand asserts claims based upon or arising out of events occurring through September 17, 2025, those claims are also released claims barred by the September 2025 General Release.

50. The May 18, 2026 Demand purports to proceed jointly and in aggregated fashion with 22 claimant entities, including Dropping Donuts, LLC.

51. DonutNV has not agreed to arbitrate the Hughey Defendants' claims jointly, collectively, on a class-wide basis, or in any other non-individual format.

52. To the extent the May 18, 2026 Demand seeks class-wide, representative, collective, consolidated, mass, joint, aggregated, or other non-individual treatment of the Hughey Defendants' claims, it is inconsistent with the Franchise Agreement's individual-action requirement and class-waiver provision.

53. The May 18, 2026 Demand seeks punitive or exemplary damages and other monetary relief that is barred or limited by the Franchise Agreement's damages-waiver provision, except to the extent such damages are expressly authorized by federal statute.

54. On May 19, 2026, DonutNV issued a written demand for advancement, compliance with the General Releases, and release-specific information.

55. Counsel for the claimants has not responded or caused the Hughey Defendants to comply with their release, covenant-not-to-sue, and advancement obligations.

56. DonutNV did not bargain merely for a later damages remedy if the Hughey Defendants filed released claims. DonutNV bargained for the right not to be sued, threatened, or forced to defend released claims at all.

57. The continued prosecution of released claims deprives DonutNV of the core benefit of the General Releases and covenant-not-to-sue provisions, causes business disruption and attorneys' fees, threatens reputational and franchise-system harm, impairs DonutNV's goodwill, and undermines the finality of the parties' negotiated agreements.

58. DonutNV seeks interim and provisional judicial relief to preserve the status quo and prevent ongoing breach of the General Releases, covenant-not-to-sue provisions, advancement obligations, and non-individual-action limitations, without asking this Court to adjudicate the merits of any non-released claim that must be arbitrated individually.

**Count I**

**Interim and Provisional Injunctive Relief Under Franchise Agreement § 17.1(c) and the General Releases' Express Stipulation to Entry of Injunction Pending Arbitration or Final Determination of Release Enforcement**

59. DonutNV incorporates paragraphs 1 through 57.

60. DonutNV brings this count because the Franchise Agreement expressly permits DonutNV to seek interim and provisional injunctive relief in court without waiving its contractual arbitration rights.

DonutNV seeks interim and provisional injunctive relief to preserve the status quo and prevent the Hughey Defendants from continuing to assert, prosecute, or maintain released claims in violation of the General Releases and covenant-not-to-sue provisions pending final determination of the parties' rights.

This is not merely a standard request for preliminary injunctive relief. The General Releases contain an express stipulated-injunction provision. They provide that the Released Parties shall have the right to injunctive relief for breach of the General Releases and covenant-not-to-sue provisions, and that the Releasing Parties irrevocably agree to entry of an injunction dismissing any claims or counterclaims brought in contradiction to or breach of the General Releases and covenant-not-to-sue provisions. The Releasing Parties therefore already consented, in advance and irrevocably, to injunctive relief dismissing or barring claims brought in contradiction to, or in breach of, the General Releases and covenants not to sue.

The injunction DonutNV seeks is therefore not merely a conventional preliminary-injunction request. Hughey Defendants already agreed, in advance and in writing, that

injunctive relief is appropriate to dismiss or bar claims brought in contradiction to the General Releases and covenant-not-to-sue provisions.

61. A preliminary injunction is appropriate where the movant shows: (1) substantial likelihood of success on the merits; (2) irreparable injury absent injunction; (3) that the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) that the injunction would not be adverse to the public interest. See Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).

62. The status quo is the last lawful condition before the Hughey Defendants' breach: the parties were bound by the General Releases, covenant-not-to-sue provisions, advancement obligations, individual-action requirement, class-waiver provisions, damages-waiver provisions, and other continuing contractual obligations, and the Hughey Defendants were not prosecuting released claims.

63. DonutNV has a substantial likelihood of success on the merits because valid releases are enforceable under Florida law and terminate rights covered by the release. See Pettinelli v. Danzig, 722 F.2d 706, 708 (11th Cir. 1984); Hall v. Burger King Corp., 912 F. Supp. 1509, 1520 (S.D. Fla. 1995).

64. DonutNV is also likely to succeed because Florida law enforces broad release language, including releases of known and unknown claims, according to the parties' contractual language. See Hardage Enters., Inc. v. Fidesys Corp., 570 So. 2d 436 (Fla. 5th DCA 1990); Sottile v. Gaines Constr. Co., 281 So. 2d 558, 561 (Fla. 3d DCA 1973).

65. DonutNV is likely to succeed because the Hughey Defendants executed the January 2026 General Release, released all claims arising from events occurring through January 31, 2026, covenanted not to sue concerning released claims, and then participated in the May

18, 2026 Demand asserting claims that arise in whole or substantial part from released franchise-related events.

66. DonutNV will suffer irreparable injury absent interim and provisional injunctive relief because the harm is not limited to a later calculable damages award. The harm includes deprivation of bargained-for release rights, loss of contractual finality, forced defense of released claims, interference with agreed dispute-resolution rights, business disruption, reputational harm, franchise-system disruption, impairment of goodwill, and the continued prosecution of claims the Hughey Defendants promised not to bring.

67. A later damages award cannot restore DonutNV's lost benefit of avoiding the released proceeding in the first place.

68. The Hughey Defendants' failure or refusal to satisfy the advancement obligations further confirms that post hoc monetary relief will not fully remedy the immediate harm caused by their prosecution of released claims. DonutNV does not seek an asset freeze or prejudgment security; it seeks to stop ongoing breaches of negative covenants and enforce bargained-for contractual rights.

69. The threatened injury to DonutNV outweighs any harm to the Hughey Defendants because the Hughey Defendants will suffer no cognizable prejudice from being required to comply with the agreements they signed and to refrain from prosecuting released claims.

70. The public interest favors enforcing written contracts, releases, covenants not to sue, advancement obligations, and agreed dispute-resolution limitations.

71. Interim and provisional court-ordered injunctive relief is consistent with the parties' agreements and preserves, rather than waives or defeats, the parties' arbitration rights concerning any non-released arbitrable claims.

72. DonutNV requests that the Court require no bond or only a nominal bond under Rule 65(c) because the requested injunction merely preserves the parties' contractual status quo and requires the Hughey Defendants to comply with their written agreements.

WHEREFORE, based first on Defendants' express and irrevocable contractual stipulation to entry of an injunction, and independently on the applicable injunction factors, DonutNV requests interim, preliminary, and permanent injunctive relief enjoining the Hughey Defendants from asserting, prosecuting, maintaining, or continuing any claim against DonutNV or any Released Party that arose on or before January 31, 2026 and falls within the January 2026 General Release; enjoining the Hughey Defendants from asserting, prosecuting, maintaining, or continuing any claim that arose on or before September 17, 2025 and falls within the September 2025 General Release; requiring the Hughey Defendants to withdraw, dismiss, or stay any released claims in the May 18, 2026 Demand; preserving DonutNV's rights concerning individual-action and damages-waiver limitations; requiring no bond or only a nominal bond; and awarding all other relief the Court deems proper.

### Count II

### Declaratory Judgment: Validity and Enforceability of General Releases

73. DonutNV incorporates paragraphs 1 through 57.

74. An actual controversy exists concerning whether the General Releases are valid, binding, enforceable, and a complete defense to released claims asserted or threatened by the Hughey Defendants.

75. The General Releases were supported by good and valuable consideration, including deferred default status, development cure options, franchise-related concessions, fee-related concessions, and other contractual benefits provided by DonutNV.

76. Matthew Lee Hughey and Tanya R. Hughey voluntarily executed the General Releases and acknowledged their opportunity to consult counsel.

77. Matthew Lee Hughey and Tanya R. Hughey executed the General Releases individually and on behalf of any entity through which they interacted with any Released Party, including Dropping Donuts, LLC.

78. Florida law favors settlement and release finality, and a valid release is enforceable according to its terms. See Pettinelli, 722 F.2d at 708; Hall, 912 F. Supp. at 1520; Hardage, 570 So. 2d 436.

79. The General Releases bar claims arising out of or relating to events occurring through the date of each applicable release, including claims arising out of or relating to the Franchise Agreement and related franchise documents.

80. The January 2026 General Release bars claims arising out of or relating to events occurring through January 31, 2026.

81. The September 2025 General Release bars claims arising out of or relating to events occurring through September 17, 2025.

82. The claims asserted or threatened by the Hughey Defendants in the May 18, 2026 Demand are released to the extent they arise from events occurring through January 31, 2026, and are independently released to the extent they arise from events occurring through September 17, 2025.

83. DonutNV is entitled to a declaration that the General Releases are valid and enforceable and bar the Hughey Defendants from asserting released claims against DonutNV and the Released Parties.

WHEREFORE, DonutNV requests a declaration that the General Releases are valid and enforceable and bar the Hughey Defendants from asserting released claims against DonutNV and the Released Parties.

## Count III

### Breach of General Releases and Covenant Not to Sue

84. DonutNV incorporates paragraphs 1 through 57.

85. The General Releases are valid and enforceable contracts.

86. DonutNV performed or substantially performed its obligations under the General Releases and related agreements.

87. The Hughey Defendants breached the General Releases and covenant-not-to-sue provisions by filing, authorizing, joining, prosecuting, maintaining, encouraging, assisting, or participating in the May 18, 2026 Demand to the extent the Demand asserts released claims against DonutNV or Released Parties.

88. The Hughey Defendants' breach has caused DonutNV damages, including attorneys' fees, costs, business disruption, reputational harm, harm to goodwill, and the need to enforce its release and no-suit rights.

89. The General Releases expressly preserve DonutNV's right to seek injunctive relief for breach of the General Releases and covenant-not-to-sue provisions.

90. Fees and costs incurred because a party breaches a covenant not to sue constitute damages caused by that breach. Here, the parties also expressly agreed to advancement and fee/cost remedies.

WHEREFORE, DonutNV requests damages, injunctive relief, attorneys' fees, costs, interest, and all other relief the Court deems proper.

### Count IV

### Enforcement of Advancement Obligations

91. DonutNV incorporates paragraphs 1 through 57.

92. The General Releases require each undersigned Releasor, upon filing suit or counterclaim in litigation or arbitration, or threatening the same, to immediately pay the Released Parties $25,000 upon demand as partial satisfaction of expenses incurred or likely to be incurred in evaluating and responding to such claims or threatened claims.

93. Matthew Lee Hughey and Tanya R. Hughey are each undersigned Releasors.

94. The Hughey Defendants triggered the advancement obligations by filing, authorizing, joining, prosecuting, maintaining, encouraging, assisting, or participating in the May 18, 2026 Demand asserting released claims.

95. DonutNV demanded payment of the advancement obligations on May 19, 2026.

96. The Hughey Defendants have not paid the advancement amounts.

97. The advancement obligations are express, immediate contractual payment obligations triggered by the filing, threatening, or assertion of released claims in litigation or arbitration.

98. Because Matthew Lee Hughey and Tanya R. Hughey are each undersigned Releasors, DonutNV is entitled to $50,000 under the advancement provisions, or alternatively

$25,000 if the Court construes the advancement obligation as a single collective obligation.

99. DonutNV is entitled to enforcement of the advancement obligations, including an order requiring payment of the advancement amount, plus attorneys' fees, costs, interest, and all other recoverable amounts.

WHEREFORE, DonutNV requests an order enforcing the advancement obligations and requiring Matthew Lee Hughey and Tanya R. Hughey to pay DonutNV $50,000, or alternatively $25,000 if the Court construes the advancement obligation as a single collective obligation, plus attorneys' fees, costs, interest, and all other recoverable amounts.

## Count V

## Declaratory and Interim Injunctive Relief Enforcing Individual-Action Requirement and Class-Waiver Provision

100. DonutNV incorporates paragraphs 1 through 57.

101. The Franchise Agreement requires claims to be arbitrated, litigated, or otherwise resolved on an individual basis.

102. The Hughey Defendants waived any right to act on a class-wide basis.

103. The May 18, 2026 Demand identifies 22 claimant entities, including Dropping Donuts, LLC, and purports to proceed in a single aggregated arbitration proceeding.

104. DonutNV has not agreed to arbitrate the Hughey Defendants' claims jointly, collectively, on a class-wide basis, or in any other non-individual format.

105. To the extent the May 18, 2026 Demand seeks class-wide, representative, collective, consolidated, mass, joint, aggregated, or other non-individual treatment of the Hughey

Defendants' claims, it conflicts with the Franchise Agreement's individual-action requirement and class-waiver provision.

106. The FAA preempts state-law rules that condition enforcement of arbitration agreements on the availability of classwide arbitration procedures. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344, 352 (2011).

107. Parties may not be compelled into class arbitration absent a contractual basis for concluding they agreed to class arbitration. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010); Lamps Plus, Inc. v. Varela, 587 U.S. 176 (2019).

108. In the Eleventh Circuit, availability of class arbitration is presumptively a gateway question of arbitrability for the court unless the parties clearly and unmistakably delegated that issue. See JPay, Inc. v. Kobel, 904 F.3d 923 (11th Cir. 2018).

109. An actual controversy exists concerning whether the Hughey Defendants may proceed jointly, collectively, on a class-wide basis, or in any other non-individual format despite the Franchise Agreement's individual-action requirement and class-waiver provision.

110. DonutNV is entitled to a declaration that the Hughey Defendants must proceed, if at all, only on an individual basis and may not pursue class-wide, representative, collective, consolidated, mass, joint, aggregated, or other non-individual claims against DonutNV absent DonutNV's contractual consent.

111. DonutNV is also entitled to interim and provisional injunctive relief preserving its individual-action and class-waiver rights pending final determination of the parties' rights.

WHEREFORE, DonutNV requests declaratory and interim injunctive relief enforcing or preserving the Franchise Agreement's individual-action requirement and class-waiver provision,

and declaring that the Hughey Defendants must proceed, if at all, only on an individual basis absent DonutNV's contractual consent.

### Count VI

### Declaratory and Interim Injunctive Relief Concerning Damages-Waiver Provision

112. DonutNV incorporates paragraphs 1 through 57.

113. The Franchise Agreement waives punitive damages and other monetary damages not measured by actual damages, except damages authorized by federal statute.

114. The May 18, 2026 Demand seeks punitive or exemplary damages, statutory damages, and other monetary relief.

115. An actual controversy exists concerning whether the Hughey Defendants may pursue punitive, exemplary, or other non-actual damages barred by the Franchise Agreement.

116. Florida law enforces clear contractual waivers of consequential and similar categories of damages between contracting parties. See Keystone Airpark Auth. v. Pipeline Contractors, Inc., 266 So. 3d 1219, 1222-23 (Fla. 1st DCA 2019).

117. DonutNV is entitled to a declaration that the Hughey Defendants may not pursue punitive, exemplary, or other monetary damages not measured by actual damages, except to the extent such damages are authorized by federal statute.

118. Alternatively, DonutNV is entitled to an order preserving DonutNV's right to have the damages-waiver provision enforced in arbitration or in any appropriate forum.

119. DonutNV is also entitled to interim and provisional injunctive relief preserving its damages-waiver rights pending final determination of the parties' rights.

WHEREFORE, DonutNV requests declaratory and interim injunctive relief enforcing or preserving the Franchise Agreement's damages-waiver provision, or alternatively preserving

DonutNV's right to have the damages-waiver provision enforced in arbitration or in any appropriate forum.

## Count VII

## Breach of Franchise Agreement

120. DonutNV incorporates paragraphs 1 through 57.

121. The Franchise Agreement is valid and enforceable.

122. DonutNV performed or substantially performed its obligations under the Franchise Agreement, except to the extent any performance was excused or prevented by the Hughey Defendants' conduct.

123. The Hughey Defendants breached or threatened to breach the Franchise Agreement by violating its dispute-resolution provisions, individual-action requirement, class-waiver provision, damages-waiver provision, reporting obligations, and continuing contractual duties.

124. The Hughey Defendants breached or threatened to breach the Franchise Agreement by participating in a single aggregated arbitration demand with 21 other claimant entities despite the Franchise Agreement's requirement that claims be arbitrated, litigated, or otherwise resolved on an individual basis.

125. The Hughey Defendants breached or threatened to breach the Franchise Agreement by seeking punitive, exemplary, or other non-actual damages barred by the Franchise Agreement's damages-waiver provision, except to the extent such damages are expressly authorized by federal statute.

126. The Hughey Defendants breached or threatened to breach the Franchise Agreement by failing to comply with dispute-resolution limitations, release-related obligations, and

other continuing contractual obligations incorporated into or preserved by the Franchise Agreement and related documents.

127. DonutNV has suffered damages, including attorneys' fees, costs, business disruption, reputational harm, impairment of goodwill, and harm to its contractual and franchise-system rights.

WHEREFORE, DonutNV requests damages, injunctive relief, attorneys' fees, costs, interest, and all other relief the Court deems proper.

### Reservation and Demand for Contractual Attorneys' Fees and Costs

128. DonutNV incorporates paragraphs 1 through 127.

129. The Franchise Agreement and General Releases provide for recovery of attorneys' fees, costs, and expenses.

130. DonutNV has retained counsel and is obligated to pay attorneys' fees and costs.

131. DonutNV demands recovery of its attorneys' fees, costs, and expenses from the Hughey Defendants to the fullest extent permitted by contract and law.

### Prayer for Relief

DonutNV requests that the Court enter judgment in its favor and against the Hughey Defendants as follows:

A. declaring the September 2025 and January 2026 General Releases valid and enforceable;

B. declaring that the General Releases bar the Hughey Defendants from asserting released claims against DonutNV and the Released Parties;

C. preliminarily and permanently enjoining the Hughey Defendants from asserting, prosecuting, maintaining, or continuing any claim against DonutNV or any Released

Party that arose on or before January 31, 2026 and falls within the January 2026 General Release;

D. preliminarily and permanently enjoining the Hughey Defendants from asserting, prosecuting, maintaining, or continuing any claim against DonutNV or any Released Party that arose on or before September 17, 2025 and falls within the September 2025 General Release;

E. requiring the Hughey Defendants to withdraw, dismiss, or stay any released claims in the May 18, 2026 Demand;

F. enforcing the advancement obligations and requiring Matthew Lee Hughey and Tanya R. Hughey to pay DonutNV $50,000, or alternatively $25,000 if the Court construes the advancement obligation as a single collective obligation;

G. declaring and enforcing, or alternatively preserving, the Franchise Agreement's individual-action requirement and class-waiver provision;

H. declaring that the Hughey Defendants must proceed, if at all, only on an individual basis absent DonutNV's contractual consent;

I. declaring and enforcing, or alternatively preserving, the Franchise Agreement's damages-waiver provision;

J. awarding damages for breach of the General Releases, covenant-not-to-sue provisions, advancement obligations, and Franchise Agreement;

K. awarding DonutNV its attorneys' fees, costs, and expenses;

L. awarding pre-judgment and post-judgment interest;

M. requiring no bond or only a nominal bond under Rule 65(c) for any interim or preliminary injunctive relief; and

N. awarding all further relief the Court deems just and proper.

## Demand for Jury Trial

DonutNV demands trial by jury on all issues so triable.

Respectfully submitted,


GROSS LAW GROUP, P.A.
Travis Tarpeh, Esq.
4408 Delwood Lane, Suite 14
Panama City Beach, FL 32408
Tel. 321-465-7007 or 850-749-6055
Email: travis@grosslaw.com
Secondary Email: pleadings@grosslaw.com
/s/ Travis Tarpeh
Travis Tarpeh, Esq.
Florida Bar No. 1028761

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# OCALA DIVISION

DONUTNV FRANCHISING, INC.,                    Case No.: 5:26-cv-000372

Plaintiff,
v.

DROPPING DONUTS, LLC,
MATTHEW LEE HUGHEY, and
TANYA R. HUGHEY,
Defendants.

_____/

## VERIFICATION OF COMPLAINT

I, Alex Gingold  declare as follows:
1. I am the Co-Founder of DonutNV Franchising, Inc. ("DonutNV").
2. I am authorized to make this verification on behalf of DonutNV.
3. I have reviewed the foregoing Complaint filed by DonutNV against DROPPING DONUTS, LLC, MATTHEW LEE HUGHEY, and TANYA R. HUGHEY.
4. The factual allegations in the Complaint are true and correct based on my personal knowledge, DonutNV's books and records, information available to DonutNV in the ordinary course of business, and/or information provided to me by DonutNV personnel, except as to matters stated on information and belief, and as to those matters, I believe them to be true.
5. I understand that DonutNV is seeking interim and provisional injunctive relief, declaratory relief, enforcement of release obligations, enforcement of advancement obligations, damages, attorneys' fees, costs, and other relief.
6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of May, 2026.

DocuSigned by:

*Alex Gingold*

83D0C85CE3E7452...

Alex Gingold
Co-Founder
DonutNV Franchising, Inc.